| UNITED STATES DISTRICT COURT | SOUTHERN DISTRICT OF TEXAS<br>GALVESTON DIVISION |
|---|---|

| | | |
|---|---|---|
| LANDIS CRAVENS,<br><br>*Plaintiff*,<br><br>v.<br><br>CITY OF TEXAS CITY, TEXAS and<br>ABEL GARZA, JR.,<br><br>*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | No. 3:26-cv-00244 |

**PLAINTIFF LANDIS CRAVENS' FIRST AMENDED COMPLAINT**

Plaintiff Landis Cravens (referred to as "Plaintiff" or "Cravens"), files this Original Complaint against Defendants City of Texas City, Texas ("Texas City") and Abel Garza, Jr. ("Garza") (collectively referred to as "Defendants"), showing the Court as follows:

1. Plaintiff Landis Cravens, an African American male, was terminated by Defendants because of his race, color, political support for, association with, and/or perceived loyalty to the prior mayor of Texas City. Immediately after new Mayor, Abel Garza, Jr., took office, Defendants terminated Cravens from his position as Chief of Police without good cause, without lawful process, and without reinstating him to his prior classified rank as required by Chapter 143 of the Texas Local Government Code. Cravens' termination was not based on misconduct, poor performance, insubordination, fraud, or any lawful disciplinary reason. Instead, Defendants terminated him because of his race, color, protected political speech, and political association. As such, Cravens brings this suit against Defendants for violating his

rights under the First and Fourteenth Amendments to the United States Constitution, pursuant to 42 U.S.C. §§ 1981, 1983 and 1988.

## I. THE PARTIES & JURISDICTION

2. Plaintiff, Landis Cravens, is a natural person residing in Galveston County, Texas. Mr. Cravens has standing to file this lawsuit.

3. Defendant City of Texas City, Texas is an incorporated municipality and political subdivision of the State of Texas and may be served with process by serving its mayor, clerk, secretary, treasurer, or other appropriate official at City Hall, 1801 9th Avenue North, Texas City, Texas 77590, or wherever else service he/she may be found. See Tex. Civ. Prac. & Rem. Code § 17.024(b).

4. Defendant Abel Garza, Jr. is the Mayor of the City of Texas City, Texas. Garza may be served with process at City Hall, 1801 9th Avenue North, Texas City, Texas 77590, or wherever he may be found.

5. This action arises under 42 U.S.C. §§ 1981, 1983 and 1988, U.S. Const. amend. I, and U.S. Const. amend. XIV.

6. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 because this lawsuit arises under the Constitution and laws of the United States and seeks to redress the deprivation of rights, privileges, and immunities secured by the United States Constitution.

7. Venue is proper in the Galveston Division of the United States District Court for the Southern District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because Defendants reside in the Galveston Division of the Southern District of Texas and/or a substantial part of the events

or omissions giving rise to Craven's claims occurred in the Galveston Division of the Southern District of Texas.

## II. FACTUAL BACKGROUND

8. Cravens began working for Texas City's Police Department on or about June 26, 1995, as a patrolman.

9. Over the course of approximately thirty years, Cravens served Texas City and rose through the ranks of the Texas City Police Department.

10. Before being appointed Chief of Police, Cravens held the rank of Assistant Chief.

11. On or about August 16, 2023, the Texas City Commission passed Resolution No. 2023-098 confirming the Mayor's appointment of Cravens as Chief of Police for the City of Texas City; after his appointment, the Mayor retained the final authority to remove (as opposed to merely appoint) Cravens from his position as Chief of Police.

12. Resolution No. 2023-098 was signed by then-Mayor Dedrick D. Johnson, attested by Texas City Secretary Rhomari D. Leigh, and approved as to form by Texas City Attorney Kyle L. Dickson.

13. On or about October 21, 2024, Texas City and Cravens entered into a written contract entitled, Memorandum of Understanding ("MOU"), regarding Cravens' employment as chief of police.

14. The MOU was drafted by the Texas City attorney, Kyle Dickson.

15. Mayor Dedrick D. Johnson, Texas City attorney, Kyle Dickson, and Texas City Secretary, Rhomari D. Leigh, signed the MOU on behalf of Texas City.

16. The MOU provided that Texas City would employ Cravens as Police Chief effective October 21, 2024, and provided minimum guarantees regarding salary, vacation, sick leave, insurance, equipment, a take-home vehicle, indemnity, and other employment terms.

17. The MOU also gave Cravens a fixed-term and good-cause employment protection. Paragraph 9 provided:

> This employment contract shall employ the Chief for an additional minimum of a five-year term, beginning at the date **October 21, 2024**, and ending **October 21, 2029**. During this five-year term, the City may only terminate Chief's employment upon good cause which is defined as: willful misconduct, willful insubordination, fraud, or material breach of the terms and conditions delineated herein. Upon expiration of the five-year term specified herein, the Chief's employment shall be "at will" as exists with all other Executive Committee members.

This protection was overridden by political/racial considerations.

18. The MOU provided that it represented the entire agreement between the parties, could not be changed except by written amendment duly executed by all parties, and would be governed by Texas law with venue in Galveston County, Texas.

19. Texas City accepted Cravens' services as Chief of Police after the MOU was executed.

20. Texas City paid Cravens' in accordance with the executed MOU.

21. Historically, Texas City used the same written MOU to memorialize the employment of its chief of police and other executive positions.

22. Texas City received the direct benefit of those services, including police leadership, law-enforcement administration, public-safety management, and operation of the police department.

23. Cravens is an African American male.

24. Then-Mayor Dedrick D. Johnson is also an African American male.

25. During the prior administration, Texas City had several African American employees in high-level leadership positions, including Cravens as Chief of Police, Cynthia Rushing as the Chief Financial Officer, and Mayor Dedrick D. Johnson.

26. The presence of African American employees in key leadership positions became a target of racial and political resentment during and after the 2026 mayoral election.

27. Public commentary surrounding the 2026 mayoral election and transition included racially charged attacks on City leadership and calls to remove perceived "DEI" officials. One public comment stated:




28. Some of the public commentary was not so subtle and included outwardly racially derogatory comments concerning the City's leadership:







29. Cravens' support of Mayor Dedrick Johnson during the 2026 mayoral race was not a secret.

30. Cravens openly voiced his support of Mayor Dedrick Johnson's bid for reelection.

31. For example, Cravens displayed Mayor Dedrick Johnson's campaign sign in the front yard of his home.

32. He also attended the campaign events on behalf of Mayor Dedrick Johnson and voiced his public support for Mayor Johnson as a private citizen.

33. Texas City's Chief Financial Officer Cynthia Rushing, also openly supported Mayor Dedrick Johnson's re-election campaign by attending campaign events and displaying Mayor Johnson's campaign sign in her yard.

34. In May of 2026, Texas City had its general election for mayor and Defendant Garza was elected over Mayor Johnson.

35. Days after Mayor Garza was sworn into office as Texas City mayor, he abruptly terminated Cravens from the position of Chief of Police without identifying misconduct, poor performance, fraud, insubordination, material breach, or any civil-service basis for removal.

36. Importantly, during the termination meeting Defendant Garza mentioned to Cravens that he thought Cravens, "hated my [his] guts."

37. Garza also refused to reinstate Craven to his prior classified rank as required by Chapter 143 of the Texas Local Government Code, because, according to him, he has the final word.

38. On the same day, Mayor Garza also terminated Cynthia Rushing, also African American.

39. Defendants promoted James Patterson to replace Cravens as the Texas City police chief.

40. James Patterson is Caucasian and is less experienced and less qualified than Cravens for the role of police chief.

41. James Patterson also publicly supported Mayor Garza's mayoral campaign.

TCMPA has continued to meet with Interim Chief Patterson, and we are grateful to have a leader who values open communication and ensures the voices of our officers are heard. That partnership has helped create an environment where employees feel respected, supported, and united.

This change in leadership has brought our department closer together and reinforced the belief that we are strongest when we work collectively. TCMPA remains committed to representing every rank-and-file officer within our department, and we look forward to reaching that goal by 2027.

Congratulations to Interim Chief Patterson on his swearing-in. We appreciate your leadership and look forward to continuing the progress we have already begun to see throughout the department

City of Texas City #healthymind #betterofficers #HealingTogether #thankyouTC #teamtcpd




42. As a result of Defendants' conduct, Cravens was terminated for engaging in political activity in violation of the rights guaranteed to him by U.S. Const. amend. I.

43. Alternatively, as a result of Defendants' conduct, Cravens was terminated due to his race/color, African American, in violation of 42 U.S.C. § 1981.

44. Defendants' wrongful acts have directly and/or proximately caused grievous, permanent injury to Cravens, including great emotional distress, physical pain, mental anguish, fear, humiliation, embarrassment, degradation, injury to his reputation, suffering and economic damages (including loss of income).

45. As a result of Texas City's unlawful conduct, Plaintiff has suffered and will continue to suffer damages in the form of back pay, front pay, lost fringe benefits, compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

## III. COUNT ONE— VIOLATION OF 42 U.S.C. § 1983 / CRAVENS' FIRST AMENDMENT RIGHTS: FREEDOM OF SPEECH AND POLITICAL ASSOCIATION (GARZA)

46. Cravens adopts by reference all of the facts set forth above. *See*, Fed. R. Civ. P. 10(c).

47. The First Amendment, made applicable to the states through the Due Process Clause of the Fourteenth Amendment, protects public employees from adverse employment action resulting from protected political speech, political association, political support, and political affiliation.

48. Garza terminated Cravens because Cravens was and/or perceived as politically aligned with former Mayor Johnson and the prior administration.

49. Cravens had a constitutional right to support, associate with, and be aligned with the political candidate and administration of his choice, including former Mayor Dedrick D. Johnson and the prior administration.

50. Cravens' protected political speech and political association involved matters of public concern, including city governance, police-department leadership, public safety, municipal administration, and the operation of Texas City government.

51. Cravens' interest in engaging in protected political speech and political association outweighed any legitimate governmental interest Defendants had in terminating him for political reasons.

52. Garza, acting under color of Texas law, terminated Cravens because of Cravens' protected political speech, protected political association, political support, and perceived loyalty to the prior mayor and prior administration.

53. Garza's unlawful conduct caused grievous injury to Cravens, including economic damages, emotional distress, mental anguish, humiliation, embarrassment, reputational harm, and other damages.

## IV. COUNT TWO— VIOLATION OF 42 U.S.C. § 1981 & 1983 / RACE AND COLOR DISCRIMINATION / EQUAL PROTECTION: (TEXAS CITY & GARZA)

54. Plaintiff adopts by reference all of the facts set forth above. *See*, Fed. R. Civ. P. 10(c).

55. Plaintiff asserts his Count II claims under § 1981 against Texas City only.

56. Plaintiff asserts his Count II claims under § 1983 and the Equal Protection Clause against Garza, individually.

57. Cravens is an African American man and is protected from intentional race and color discrimination in public employment.

58. Section 1981 protects the right to make and enforce contracts, including the making, performance, modification, termination, and enjoyment of all benefits, privileges, terms, and conditions of the employment relationship, free from race discrimination. As against state actors, those rights are enforced through 42 U.S.C. § 1983.

59. The Equal Protection Clause of the Fourteenth Amendment prohibits state and local government officials from intentionally discriminating against an employee because of race or color.

60. Cravens was qualified for his position. He served Texas City for more than thirty years, rose through the ranks of the Texas City Police Department, and ultimately served as Chief of Police.

61. Defendants intentionally discriminated against Cravens because of his race and color by terminating his employment, refusing to identify any lawful disciplinary basis for the termination, denying him the benefit of the good-cause protections in the MOU, and refusing to reinstate him to his prior classified rank or to a rank not lower than the rank he held before becoming Chief of Police.

62. The circumstances surrounding Cravens' termination support a reasonable inference of race and color discrimination, including the public "DEI" rhetoric surrounding

the anticipated removal of minority executives, the removal of African American leaders associated with the prior administration, the lack of any stated misconduct or performance reason, and Garza's decision to remove Cravens immediately after taking office.

63. Defendants' actions were intentional, malicious, reckless, and taken with deliberate indifference to Cravens' federally protected rights.

64. Defendants' unlawful conduct caused injury to Cravens, including lost wages, lost benefits, lost employment rights, lost seniority rights, reputational harm, emotional distress, mental anguish, humiliation, and other damages.

## V. COUNT THREE— VIOLATION OF 42 U.S.C. § 1983 / *MONELL* CLAIM AGAINST LOCAL GOVERNMENTAL ENTITY: UNCONSTITUTIONAL LOCAL GOVERNMENT CUSTOM, POLICY OR PRACTICE (TEXAS CITY)

65. Plaintiff adopts by reference all of the facts set forth above. *See*, Fed. R. Civ. P. 10(c).

66. Texas City is a local governmental entity subject to suit under 42 U.S.C. § 1983.

67. At all relevant times, Garza was the Mayor of Texas City and a final policymaker for Texas City with respect to the decision to remove or terminate the Chief of Police, and he exercised his authority as the final policymaker vis-à-vis the Chief of Police to terminate Cravens (and Rushing) for racial/political reasons as explained above.

68. Texas City had a custom, policy, or practice of allowing political considerations, political loyalty, political support, and political association to determine whether Cravens and other employees (like Rushing) would remain employed with Texas City.

69. Texas City also had a custom, policy, or practice of allowing the incoming mayor to terminate protected public employees (like both Cravens and Rushing) for perceived association with a prior administration, even where doing so violated the Constitution and a written employment agreement.

70. Texas City actually knew, or should have known, of the existence of this unconstitutional custom, policy, or practice.

71. Texas City's custom, policy, or practice served as the moving force behind the deprivation of Cravens' First Amendment and Equal Protection rights.

72. Texas City's custom, policy, or practice caused grievous injury to Cravens, including economic damages, emotional distress, mental anguish, humiliation, embarrassment, reputational harm, and other damages.

## VI. ATTORNEY'S FEES & COSTS

73. Plaintiff adopts by reference all of the facts set forth above. *See*, Fed. R. Civ. P. 10(c).

74. Plaintiff is authorized to recover attorney's fees and costs on his claims by statute and under principles of equity. *See, e.g.*, 42 U.S.C. § 1988.

75. Plaintiff has retained the professional services of the undersigned attorneys.

76. Plaintiff has complied with the conditions precedent to recovering attorney's fees and costs.

77. Plaintiff is entitled to recover his attorney's fees and costs.

78. Plaintiff has incurred or may incur attorney's fees and costs in bringing this lawsuit.

79. The attorney's fees and costs incurred or that may be incurred by Plaintiff were or are reasonable and necessary.

## VII. CONDITIONS PRECEDENT

80. All conditions precedent have been performed or have occurred

## VIII. JURY DEMAND

81. Plaintiff demands a trial by jury on all issues triable to a jury. *See*, Fed. R. Civ. P. 38.

## IX. PRAYER

Plaintiff respectfully requests that the Court enter a judgment in his favor that provides the following relief:

a. judgment against Defendants for lost wages and benefits, both back pay and front pay, resulting from the deprivation of Plaintiff's constitutional rights by Defendants;

b. judgment against Texas City for breach of the Memorandum of Understanding, including actual damages, amounts due and owed, attorney's fees, interest, and all other contract relief permitted by law;

c. compensatory damages for severe mental anguish in the past and future, injury to his reputation, for adverse effects on his career, and for diminished earning capacity resulting from the discriminatory actions of Defendants;

d. punitive damages against Garza in his individual capacity in an amount found by the trier of fact to punish and deter unlawful conduct;

e. a declaration that Defendants violated Cravens' rights under the First and Fourteenth Amendments to the United States Constitution;

f. an award of reasonable and necessary attorney's fees as specifically authorized by, among other things, 42 U.S.C. § 1988;

g. prejudgment interest as provided by law;

h. post judgment interest as provided by law; and

i. Such other and further relief, at law or in equity, to which Plaintiff may show himself justly and lawfully entitled.

Respectfully Submitted,

MOORE & ASSOCIATES
Lyric Centre
440 Louisiana Street, Suite 1110
Houston, Texas 77002-1063
Telephone: (713) 222-6775
Facsimile: (713) 222-6739

By: ______________________
Melissa Moore
State Bar No. 24013189
Federal Id. No. 25122
melissa@mooreandassociates.net
Curt Hesse
State Bar No. 24065414
Federal Id. No. 968465
curt@mooreandassociates.net

**ATTORNEYS FOR PLAINTIFF LANDIS CRAVENS**