United States District Court
Southern District of Texas
**ENTERED**
November 10, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| LANDIS CRAVENS, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:26-cv-00244 |
| | § | |
| CITY OF TEXAS CITY, TEXAS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before me is a partial motion to dismiss filed by Defendants City of Texas City, Texas ("the City") and Abel Garza, Jr., in his official capacity. *See* Dkt. 16. The motion should be granted.

## BACKGROUND

Plaintiff Landis Cravens, an African American male, worked for the Texas City Police Department for more than 30 years, culminating in his appointment as the Chief of Police on August 16, 2023. Defendant Abel Garza, Jr. is the Mayor of Texas City. In May 2026, days after being sworn in as mayor, Garza terminated Cravens's employment with the City. That same day, Garza also terminated the employment of the City's Chief Financial Officer, Cynthia Rushing, who is an African American female. Both Cravens and Rushing had publicly supported Garza's opponent in the mayoral race. Cravens claims that his termination was based on "his race, color, protected political speech, and political association." Dkt. 13 at 1.

Cravens instituted this lawsuit against the City and Garza on July 23, 2026. After the City filed a motion to dismiss, Cravens amended his complaint. The operative pleading is Cravens's first amended complaint. *See* Dkt. 13. Cravens asserts three claims: (1) First Amendment retaliation against Garza under 42 U.S.C. § 1983; (2) race and color discrimination against the City and Garza under

42 U.S.C. §§ 1981 and 1983; and (3) a § 1983 *Monell* claim against the City. Cravens does not specify in his first amended complaint whether he intends to sue Garza in only his individual capacity, his official capacity, or both.

Defendants have filed a partial motion to dismiss. Specifically, Defendants move to dismiss both claims against the City, "any claim asserted against Mayor Garza in his official capacity, and the claim for 'breach of the Memorandum of Understanding' asserted in sub-part (b) of the Prayer." Dkt. 16 at 1. The motion before me "does not address the individual-capacity claims against Mayor Garza in Counts One and Two." *Id.* at 16. In his response brief, "Cravens stipulates to the dismissal of the claims against Garza in his official capacity as redundant, and, to the extent it was even pleaded, he stipulates to the dismissal of the claim for breach of . . . the 'Memorandum of Understanding.'" Dkt. 23 at 1 n.2. Accordingly, the only issue before me is whether Cravens has stated a *Monell* claim against the City for race and color discrimination.

## LEGAL STANDARD

A defendant may move to dismiss a complaint when a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). Conversely, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (cleaned up).

When evaluating a Rule 12(b)(6) motion, I accept "all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff." *Cummings v. Premier Rehab Keller, P.L.L.C.*, 948 F.3d 673, 675 (5th Cir. 2020) (quotation omitted). I "do not, however, accept as true legal conclusions, conclusory statements, or naked assertions devoid of further factual enhancement." *Benfield v. Magee*, 945 F.3d 333, 336–37 (5th Cir. 2019) (cleaned up). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

### A. *MONELL* LIABILITY

"In *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court held that Congress intended § 1983 to apply to local government entities as well as to persons." *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 452 (5th Cir. 1994) (cleaned up). The Fifth Circuit has explained the contours of *Monell* liability:

> Under the decisions of the Supreme Court and this court, municipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom. *Monell* and later decisions reject municipal liability predicated on *respondeat superior*, because the text of section 1983 will not bear such a reading. Consequently, the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability. The three attribution principles identified here—a policymaker, an official policy and the "moving force" of the policy—are necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself. Mistakes in analyzing section 1983 municipal liability cases frequently begin with a failure to separate the three attribution principles and to consider each in light of relevant case law.

*Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (cleaned up).

Official policy exists in two forms. "First, a plaintiff may point to a policy statement formally announced by an official policymaker." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 168 (5th Cir. 2010). Second, an official policy may "arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (quoting *Piotrowski*, 237 F.3d at 579). "A policy or custom is official only 'when it results from the decision or acquiescence of the municipal officer or body with "final policymaking authority" over the subject matter of the offending policy.'" *Peterson*, 588 F.3d at 847 (quoting *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)). "State law determines whether a particular individual is a county or municipality final decision maker with respect to a certain sphere of activity." *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996).

A custom or policy can be shown by "a pattern of unconstitutional conduct . . . on the part of municipal actors or employees," or where "a *final policymaker* took a single unconstitutional action." *Zarnow*, 614 F.3d at 169. "A customary policy consists of actions that have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct." *Id.* "Allegations of an isolated incident are not sufficient to show the existence of a custom or policy." *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992). To plausibly "plead a practice so persistent and widespread as to practically have the force of law, [Cravens] must do more than describe the incident that gave rise to his injury." *Ratliff v. Aransas County*, 948 F.3d 281, 285 (5th Cir. 2020) (quotation omitted).

### B. Cravens Fails to Identify an Official Policy

I will assume, without deciding, that Garza discriminated against Cravens based on race and color when Garza terminated Cravens's employment as the City's Chief of Police. Even so, Cravens's claims against the City necessarily fail because Garza is not the City's final policymaker for personnel decisions.

"As with other questions of state law relevant to the application of federal law, the identification of those officials whose decisions represent the official policy of the [City] is itself a legal question to be resolved by the trial judge *before* the case is submitted to the jury." *Jett*, 491 U.S. at 737. Without question, Garza acted as a decisionmaker in terminating Cravens's appointment. The relevant question, however, is whether Garza *also* acted as the City's final *policy*maker. "There is a fine distinction between a policymaker and a decisionmaker. The fact that an official's decisions are final is insufficient to demonstrate policymaker status." *Zarnow*, 614 F.3d at 167 (cleaned up). "Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986).

According to the City's charter, the "chief of police shall be appointed by the chief executive officer and confirmed by the city commission." Texas City Charter, Art. XII, § 1 (Nov. 7, 1995).[1] As for removal, the City's charter provides that "[a]ll appointive officers and employees of the city shall hold their office and employment *at the pleasure of the city commission*." *Id.* Art. XVIII, § 3 (emphasis added). Thus, by its plain language, the City has vested policymaking authority for removal of appointed City officials in the City Commission, not Mayor Garza.

In responding to this rather straightforward reading of the City's charter—in which the City Commission is the final policymaker for the removal of appointive officers like the chief of police—Cravens argues: "If that is right, either (1) Cravens is still employed by Texas City and can return to work tomorrow or (2) Texas City exists in a twilight zone where no legal liability can attach even though the sitting mayor is waging war on civil rights without formal approval." Dkt. 23 at 2. This argument conflates two distinct inquiries: whether Garza's

[1] "Though the City [charter] was never introduced into the record, [the court may] take judicial notice of it" without converting the motion to dismiss into a motion for summary judgment. *Petty v. City of Freeport*, No. 3:25-cv-00296, 2026 WL 2055186, at *4 n.4 (S.D. Tex. June 29, 2026) (quoting *Matter of Waller Creek, Ltd.*, 867 F.2d 228, 238 n.14 (5th Cir. 1989)).

purported termination of Cravens was legally valid under Texas law and the City's charter, and whether Garza's decision is attributable to the City under *Monell*. The former is a question that is not before this court. This court is solely concerned with the latter inquiry.

The Fifth Circuit has applied this distinction to a factually analogous scenario in *Bolton v. City of Dallas*, 541 F.3d 545 (5th Cir. 2008). In *Bolton*, the Dallas city manager, Ted Benavides, fired the chief of police, Terrell Bolton. The Fifth Circuit held "that, even though Benavides was the final decisionmaker, his actions in this respect were not the policy of the city and, as a result, the City is not liable for his termination of Bolton." *Id.* at 546. The same result follows here. As the Fifth Circuit has said, "neither complete discretionary authority nor the unreviewability of such authority automatically results in municipal liability." *Id.* at 551. "It is the Charter that announces the City's policy in this regard." *Id.* Here, the City's charter plainly makes the City Commission the final policymaker for the removal of appointive officers like the chief of police. Thus, even assuming Garza's actions were unconstitutional, they are not attributable to the City. Accordingly, Cravens cannot state a claim against the City.[2]

Cravens attempts to avoid this result by arguing that (1) he "is entitled to some discovery related to the policymaker issue because, under well-settled law, both the commission and the mayor can be policymakers depending on the facts"; and (2) that he should be given leave to amend. Dkt. 23 at 20, 22. Both arguments are unavailing. The Fifth Circuit has held, in no uncertain terms, that it is "error for the district court to analyze whether [an official] had been delegated final policymaking authority as a question of fact." *Gros v. City of Grand Prairie*, 181 F.3d 613, 617 (5th Cir. 1999). Such an inquiry must be determined "as a matter of

---

[2] Cravens contends that two terminations on one day—his own termination and Rushing's termination—can be a policy or custom. *See* Dkt. 23 at 21. It is true that a custom or policy can be shown where "a *final policymaker* took a single unconstitutional action." *Zarnow*, 614 F.3d at 169. As discussed above, however, Garza is not the City's final policymaker when it comes to terminating appointive officers like Cravens and Rushing.

state law." *Id.* As for Cravens's request to amend, Cravens does not even hint at how an amendment would change the analysis here. Cravens has already amended his complaint once. A second amended complaint will not change the text of the City's charter or this court's analysis of it. Therefore, Cravens's request for leave to amend again should be denied.

## CONCLUSION

For the reasons discussed above, I recommend that Defendants' partial motion to dismiss (Dkt. 16) be granted, and that Cravens's claims against the City be dismissed with prejudice. Cravens's individual-capacity claims against Garza for First Amendment retaliation and race and color discrimination remain pending.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED this 10th day of November 2026.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE